**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
**UNITED STATES OF AMERICA**                        :
                                                    :
                                                    :
      -v-                                           :      **S1 03 Cr. 1509 (DLC)**
                                                    :
**THOMAS T. PROUSALIS, JR.**                        :
                                                    :
                        **Defendant.**              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PROBATION'S PETITION AND**
**IN RESPONSE TO PROUSALIS'S MEMORANDUM**

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.

SEETHA RAMACHANDRAN
Assistant United States Attorney
    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
UNITED STATES OF AMERICA                      :
                                              :
                                              :
    -v-                                       :        S1 03 Cr. 1509 (DLC)
                                              :
THOMAS T. PROUSALIS, JR.                       :
                                              :
                    Defendant.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PROBATION'S PETITION AND IN RESPONSE TO PROUSALIS'S MEMORANDUM

        The Government respectfully submits this memorandum in support of the United

States Probation Department's Petition, dated February 1, 2010 (the "Petition"), that sets forth six

different violation specifications against the defendant, Thomas Prousalis.  The Government also

submits this memorandum to respond to certain claims raised by the defendant in his February 12,

2010 Memorandum in Opposition to the Government's Violation Petition and Amended Violation

Petition ("Prousalis Memo").  For the reasons set forth below, the Court should find the defendant

guilty of all six violation specifications set forth in the Petition, revoke his supervised release, and

sentence him to a term of imprisonment.

**A.      Background**

        On October 24, 2004, following his conviction for securities fraud, mail fraud, and wire

fraud, Prousalis was sentenced to 57 months' imprisonment and 3 years of supervised release.

Prousalis was released from prison in or about September 2008, and his term of supervised

release began on September 11, 2008.  Since September 2009, the Court has held three separate

conferences to address Prousalis's failure to pay restitution as mandated in the Judgment of

Conviction ("J of C").  On December 8, 2009, the Probation Department filed a petition that set

forth one specification of violation against Prousalis, arising from his failure to make the required

restitution payments.  (*See* Prousalis Memo, Ex. 8).  On February 1, 2010, after learning that

Prousalis had traveled to Albania without permission (and in violation of this Court's November

12, 2009 order), misrepresented the purpose of such travel and where he was staying, and failed

to disclose that he was interviewed in Albania in connection with a criminal investigation against

him, the Probation Department amended its petition once again by adding additional

specifications of violation.  (*See* Ex. 1).

> **1.      Prousalis's Failure to Pay Restitution**

Through his submissions to the Court, his correspondence with the Probation Department,

and through his counsel, Prousalis has taken the position that he is not required to pay more than

$100 per month in restitution, despite the payment schedule set forth in the J of C.  He argues that

even though thousands of dollars appear in his bank account each month from unidentified

sources, that money does not constitute "income" for the purpose of restitution, because it consists

solely of loan and business expenses that have been advanced by friends, family, and companies

that he does business with.  While Prousalis claims that he has not earned a dime since he was

released from prison, his bank statements reflect extraordinary spending on living expenses and

lavish gifts to others.  In addition, Prousalis has taken multiple international trips since his release

from prison, which he claimed were business trips paid for by others, or for which the expenses

had been advanced to him.  In Prousalis's Memo, he claims that he does not even have a personal

bank account.  Rather, Prousalis asserts that his only bank account is a "business" account,

associated with a company he purportedly owns, N1TP, LLC, despite his routine use of the funds

in this bank account for personal expenses, like cable bills, restaurants, and gifts to his adult daughters.  (*See* Prousalis Memo at 17).  Prousalis also represented, through counsel, that all money he receives is deposited into only one bank account, which he has disclosed to Probation (Tr. 17)[1].

At a status conference on December 10, 2010, Prousalis's counsel assured the Court that while Prousalis took the position that advance payments from a business or loan do not constitute income for the purpose of restitution, and planned to submit support for that argument to the Court, he would abide by "whatever the court decides in terms of interim payments."  (Tr. 5). The Court then provided a detailed framework for Prousalis to consider when presenting his arguments regarding restitution payments, noting that restitition was properly calculated pursuant to the J of C, as 20% of whatever funds were deposited into his account in a given month.  (Tr. 12).  The Court further explained:

> If [Prousalis] wants some other program to apply, again, this is just my starting point, he would have to explain why.  He would have to explain why his expenses that are necessary and appropriate come before restitution or why his income shouldn't be considered or money he received shouldn't be considered income for paying restitution.  But the problem with that is that he has had sufficient discretionary fund to make extraordinary payments to support an extravagant personal lifestyle and to make extravagant gifts to his dependents or people he argues are his dependents even though they are adult children."

(Tr. 12-13).

At the December 10 conference, Prousalis asked for permission to travel to Albania for business, from December 28, 2009 to January 13, 2010.  The Government consented to Prousalis's request, provided that he hand deliver a bank check to the Probation Department

---

[1]  "Tr." refers to the transcript of the December 10, 2009 status conference.

covering all of the outstanding restitution payments in arrears (which amounted to over $20,000),

by December 21, 2009.  Prousalis did, in fact, deliver a check for approximately $20,420 to

Probation Officer Elissa Martins, and he was granted permission to go on the proposed trip to

Albania, for business purposes.  Since that payment, the Probation Department has determined

from a review of Prousalis's bank statements, that he owed $770 in restitution for the month of

December 2009 (due on January 15, 2010), and $600 for the month of January 2010 (due on

February 15, 2010), and instructed him to make those payments.  (*See* Ex. 2).  To date, Prousalis

has only made two additional payments –  $85.35 on or about January 6, 2010, and $600, on or

about February 19, 2010.  (*See* Ex. 3).  Prousalis continues to assert that he does not owe more

than $100 per month in restitution, and that the payments he has made so far (including the

$20,420 in arrears) were only made pending the Court's ruling on whether money he characterizes

as loans and business expenses are "income" for the purpose of calculating restitution payments.

(*See* Prousalis Memo at 19).

> ### 2.       Prousalis's Misrepresentations Regarding Travel to Albania

After Prousalis left for Albania in December 2009, the Probation Department learned,

through law enforcement authorities in Albania, that Prousalis was not registered at the Sheraton

Hotel in Tirana, where he had represented to Probation that he would be staying.  On January 11,

2009, Probation Officer Martins contacted Prousalis by email, informed him that she learned that

no one was registered under his name at the Sheraton Hotel, and instructed him to immediately

disclose where he was staying.  (*See* Prousalis Memo, Ex. 31).  On January 12, 2010, Prousalis

replied by email and only then disclosed that he was staying at the Iliria hotel in Tirana.  (*See id.*).

On January 12, 2010, Albanian law enforcement authorities located Prousalis at the Iliria

Hotel and interviewed him in connection with a criminal investigation into his alleged theft of

$500,000 from Stefan Pinguli, an Albanian businessman.  The U.S. Department of Justice Anti-

Corruption Resident Legal Advisor in Albania, Cynthia Eldridge, provided the Government with

a very detailed account of the interview, as related to her by Ilda Stefa, one of the Albanian

investigators who interviewed Prousalis on January 12.  In addition, on February 17, 2010, the

Government and Probation Officer Martins interviewed Ms. Stefa through a videoconference.[2]  In

sum and substance, Ms. Stefa (assisted by Ms. Eldridge) relayed the following account of the

interview:

> When the officers arrived at the Iliria Hotel, they asked for Prousalis at the front
> desk.  The clerk said that Prousalis was registered at the hotel, but explained that
> he was out at the moment.  She also told them that she needed to call the hotel's
> owner to let him know what was happening.  The officers told her they would wait.
> While they were waiting, the clerk made several phone calls, one of which
> appeared to be a call to Prousalis, to warn him that the police were there.
>
> After quite a while, Prousalis came down to the lobby in the elevator, with a young
> woman, and then started down the stairs toward the restaurant (which was closed,
> but which has a back entrance).  He appeared to be trying to head out the back
> door.  The officers approached him, identified who they were and what they
> wanted, and immediately called an interpreter.  One of the investigators (Ilda
> Stefa) speaks English, but when questioning a foreigner, they are required to have
> an interpreter.  Prousalis told the officers he was going downstairs to the restaurant
> to have dinner with the young woman, whom he introduced as his fiancee, and
> asked that he be interviewed after dinner.  The officers told him that if he wished
> to have dinner, they would sit at the adjacent table until he finished and then

---

[2] Proceedings concerning a defendant's supervised release are not governed by the Rules
of Evidence.  *See* Federal Rule of Evidence 1101(d)(3); *United States v. Santos-Ferrer*, 2004
WL 2203961, at *1 (2d. Cir. Sept. 30, 2004); *United States v. Mingo*, 1996 WL 576000, at *1
(2d. Cir. Oct. 8, 1996).  Accordingly, the Government asks that the Court consider its factual
proffer in this brief.  However, if the Court wants to hear directly from Cynthia Eldridge or Ilda
Stefa, the Government can arrange for videoconference testimony during the hearing (or at any
other time convenient for the Court).  In addition, Probation Officer Martins will also be
prepared to testify about information she learned from Albanian authorities and in documents she
has reviewed.

interview him.  However, they soon discovered that the restaurant was closed and did not serve dinner at all.

At this point, the hotel owner showed up and greeted Prousalis and introduced another person as an attorney.  The officers had already read Prousalis his rights.  The attorney began to threaten the officers, told them that he could get them fired and that they did not know who they were dealing with.  Ms. Stefa asked Prousalis if he wanted the attorney to represent him and Prousalis declined.  Prousalis said he did not know the man, denied that he was represented, and did not request to be represented.  Soon after, the police ordered the attorney and the hotel owner to leave and they did so.  The owner of the Iliria Hotel is a cousin to Dashnor Shena, who is also a subject of the Albanian criminal investigation, for allegedly conspiring with Prousalis.  Also, the Iliria Hotel is a very small hotel where foreigners rarely stay.

Prousalis was served with paperwork notifying him of the charges against him.  Prousalis agreed to be interviewed, but would not agree to sign a written statement of the interview.  Prousalis told the officers that he was not in Albania on business.  Instead, he was there to visit his Albanian fiancee and his friend, Dashnor Shena.  Dashnor Shena was not present at the interview.  Prousalis asked that the young woman he called his fiancee serve as his interpreter, but his request was denied, and she was asked to leave during the interview.  At that point he told her to go to the room and wait for him.

At first, Prousalis denied knowing Pinguli, but when he was presented by a contract that both he and Pinguli signed, he admitted that he knew Pinguli.  Prousalis stated that he signed the contract only as the attorney for American Global Capital Fund and that all the money given to him was invested in that fund.  He said that he currently works in the United States as an attorney for investment banks.

Prousalis refused to produce his passport to the officers and instead showed his driver's license as a means of identification.  The officers questioned Prousalis about whether he had been "convicted" of a crime in the United States.  He responded by stating that he was "forced" to sign a plea agreement by prosecutors in order to protect his family, but that his case is on appeal so he does not know whether he has been "convicted" because he is not a criminal lawyer.  Prousalis stated that he did not serve time in prison but instead served 30 months at a military base because in the United States, white collar criminals serve time on military bases.

During the interview, Ms. Stefa informed Prousalis that a letter rogatory request had been sent to the United States through the Department of State, but that she did not know who would be responsible for gathering the evidence once the request

made its way through diplomatic channels.  She did not disclose to Prousalis any contact with the Probation Office or the United States Attorney's Office.  (At the time of the interview, Ms. Stefa had communicated only with Ms. Eldridge).

At the interview, Prousalis was served with notification of the charges, including two different summons, one for January 13 and the other for January 20, 2010.  Toward the end of the interview, Prousalis agreed to meet with the Albanian prosecutor the following day, January 13, 2010, at 1:00pm.  However, at approximately 10:30am that morning, Prousalis called Ms. Stefa and told her that he had left the country and would not be appearing.  He later sent a text message to the prosecutor's cell phone, stating that he wanted to meet on February 20, 2010, but no agreement to meet on that date has been reached.  Ms. Stefa also explained that no summons has been issued for Prousalis to appear in Albania on February 20 or any other future date.

Since leaving Albania, Prousalis has emailed Ms. Stefa correspondence that he claims he recieved from Pinguli, where Pinguli has accepted Prousalis's invitation to visit the United States and resolve any outstanding dispute.

Ms. Eldridge also provided the Government with Albanian immigration records showing that Prousalis has made four trips to Albania since August 2009.  (*See* Ex. 4)[3].  Prousalis took one of these trips, from November 25 through November 30, 2009, without the permission of the Probation Department.  In fact, the Court denied an application that Prousalis submitted through counsel to travel to Albania from November 12 through December 7, 2009.  (*See* Ex. 5).  Prousalis had also represented to Probation Officer Martins that he was traveling to California during this time period, to visit his daughters from November 23 through December 1, 2009.  (*See* Prousalis Memo, Ex. 20, 21).

**B.     Applicable Law**

Title 18, United States Code, Section 3583(e)(3) allows a Court to revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a

---

[3]  Exhibit 4 is a clearer copy of the records in Attachment 1 to the Petition.

condition of supervised release."  Accordingly, the Government's "burden of proof in supervised-release proceedings is a preponderance of the evidence, not proof beyond a reasonable doubt." *United States v. Alston*, 295 Fed. Appx. 474, 475 (2d Cir. 2008); *United States v. Carlton*, 442 F.3d 802, 807 (2d. Cir. 2006); *United States v. Thomas*, 239 F.3d 163, 168 (2d. Cir. 2001).

**C.     The Evidence Establishes Prousalis's Guilt on All Six Violations**

      **1.     Violations 1, 2 and 6: Prousalis's Failure to Pay Restitution**

*Violations 1, 2* and *6* all charge Prousalis with failing to pay his restitution, and the attached record of payment from the Clerk of the Court establishes Prousalis's nonpayment (*See* Ex. 3).  Since he began his term of supervised release, Prousalis has repeatedly failed to pay his restitution as set forth in the J of C, claiming that he earns no income and should only be required to pay $100 per month.  Although Prousalis paid the required restitution on several occasions to obtain permission to travel (and just yesterday, paid approximately $600 in restitution), he is not current on his restitution payments, and disputes that he is required to pay restitution as directed by the Probation Department, which has used the formula set forth in the J of C to calculate his monthy restitution payment based on the money deposited into his bank account.

At the December 10, 2009 conference, the Court made clear that if Prousalis intended to argue that he was not required to pay 20% of the monies received in his account each month, he needed to explain "why his expenses that are necessary and appropriate come before restitution or why his income shouldn't be considered or money he received shouldn't be considered income for paying restitution." (Tr. 12).  Prousalis's Memo provides no such explanation.  Instead, Prousalis complains about his Probation Officer, levels a number personal attacks against her, and argues that he does not in fact owe restitution as calculated by the Probation Department, simply

9

asserting that the monies he receives are advances and loans from others.  In support of his argument, Prousalis offers a so-called "statement of cash flows" for his purported business, N1TP, LLC, purported business advisory agreements with Deborah Vitale and Howard Attarian, an affidavit from Howard Attarian, a lease agreement that reflects a monthly rent of $5000 for a home that Prousalis claims as a business expense,[4] various promissory notes, and a printout of information from the IRS website.  *(See* Prousalis Memo, Ex. 14).  At the very most, these documents establish that Prousalis received some loans or advances for business expenses from others.  They do not explain how he can afford to support his extravagant lifestyle (including the numerous personal expenses reflected on his bank statements), or where his income each month comes from.  None of these documents establish how much money Prousalis is purportedly "advanced" for business expenses or loans each month, or what portion of that money he actually spends on business expenses.  Prousalis's misrepresentations to the Court and Probation about his travel to Albania, including his latest false statement that he is required to appear in Albania on February 20, 2010 on a summons (that does not exist), cast even further doubt on his claims that his travel and other expenses are for business purposes.  (*See* Ex. 6).

### 2.    Violations 3, 4 and 5:  False Representations About Travel

(a)  *Violation 3*.  The immigration records alone establish that Prousalis left the judicial district without the Probation Officer's or the Court's permission, as alleged in Violation 3.  (*See Ex. 4*).  But here, Prousalis's conduct is even more egregious, given that the Court

---

[4]  In fact, Probation Officer Martina questioned Kathleen Perka, the owner of the home where Prousalis lives, and learned that Prousalis does not actually pay rent to Ms. Perka, despite the purported lease for $5000 per month.

specifically denied his request to travel to Albania during the time period that he traveled, and

that he falsely represented to Probation that he was traveling to California to visit his daughters.

In fact, Prousalis admits that he traveled to Albania without permission, but argues that the Court

should excuse his conduct for reasons that include a so-called business emergency, and a

purported failure on the part of his counsel's secretary to inform him of the Court's ruling.  (*See*

Prousalis Memo at 20-21)[5].

(b) *Violation 4.*  First, Prousalis's own email to Probation Officer Martins

establishes that he did not truthfully disclose where he would be staying in Albania.  (*See*

Prousalis Memo, Ex. 31).  If he had decided to stay at a different hotel after arriving in Albania,

he was required to inform his Probation Officer of the change.  Second, Prousalis admitted, in his

interview with Albanian authorities, that he was not in Albania on business, but was instead

visiting a woman he described as his fiancee, and his friend, Dashnor Shena.

(c) *Violation 5.*  Prousalis failed to disclose to the Probation Officer within 72

hours that he was questioned by a law enforcement officer.  The information provided by

Albanian authorities makes clear that Prousalis knew why he was being interviewed, and was

notified of the charges against him.  Not only did he fail to notify the Probation Officer of the

interview, he now falsely claims that he is required to appear in Albania on February 20, 2010

and must travel there, when no such summons exists.

**D.**      **Prousalis's Supervised Release Should Be Revoked**

---

[5]  While Prousalis claims now that he changed his travel plans from California to Albania
due to a last-minute business emergency and was unaware of the Court's order, he continued to
suggest, in correspondence to his Probation Officer, that he had in fact traveled to California to
visit his daughters (*see* Prousalis Memo, Ex. 25), and only admits now, for the first time, that he
never took that trip and went to Albania instead.  (*See id.* at 20-21).

Prousalis's repeated refusal to follow the instructions of the Probation Department and comply with the conditions of his supervised release warrant revocation of his supervised release. Both the Court and the Probation Department have extended multiple opportunities to Prousalis to get current and stay current with his restitution payments, yet he simply refuses to do so.  He continues to dispute his obligation to pay restitution according to the payment schedule set forth in the J of C, as well as challenge the authority of the Probation Department to supervise him.  In addition, he has lied to the Probation Department about the purpose of his travel, failed to disclose being questioned by law enforcement in Albania, and violated directives from the Probation Department and even this Court, traveling to Albania without permission.  Most recently, Prousalis lied to his Probation Officer, claiming that he was required to appear in Albania on February 20, 2010, pursuant to a summons.  (*See* Ex. 6).  Clearly, nothing less than a term of imprisonment will deter Prousalis from violating the conditions of his supervised release.

For these reasons, the Government urges the Court to find Prousalis guilty on the specifications outlined in the Petition, revoke his supervised release, and sentence him to a term of imprisonment.

Dated: New York, New York
       February 19, 2010

Respectfully submitted,

PREET BHARARA
United States Attorney

By:      /s/  Seetha Ramachandran
         Seetha Ramachandran
         Assistant U.S. Attorney
         (212) 637-2546

12