



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*



*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

**MEMO ENDORSE**

March 17, 2011



**BY HAND DELIVERY**
Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re: United States v. Thomas T. Prousalis, Jr.,
       S1 03 Cr. 1509 (DLC)

Dear Judge Cote:

   At the Court's request, the Government respectfully submits its position regarding: (1) Thomas Prousalis's request to travel to Europe for business and to attend a family function and (2) the Probation Offices's request to transfer supervision of Prousalis to the United States District Court in the Eastern District of Virginia. For the following reasons, it is the Government's view that both requests should be denied.

### Background

   On October 24, 2004, following his conviction for securities fraud, mail fraud, and wire fraud, Prousalis was sentenced to 57 months imprisonment and three years of supervised release. Prousalis was released from prison and his term of supervised release began on or about September 11, 2008. On February 1, 2010, after learning that Prousalis had traveled to Albania without permission (and in violation of this Court's November 12, 2009 order), misrepresented the purpose of such travel and where he was staying, failed to disclose that he was interviewed in Albania in connection with a criminal investigation against him, and failed to make his required restitution payments, the Probation Office filed an amended petition that set fourth six specifications.

   On March 3, 2010, Prousalis pleaded guilty to four of the six specifications alleged in the violation petition, and this Court sentenced him to nine months imprisonment. This Court imposed a new term of two years and three months of supervision to follow his release from prison. Additionally, this Court imposed several special conditions of supervised release, which included the following:

The Honorable Denise L. Cote
March 17, 2011
Page 2

> The defendant shall obtain and maintain legal, gainful full-time employment and shall submit bona-fide earnings documentation as directed by the probation officer.
>
> The defendant shall be prohibited from working as a consultant, an independent contractor, or in any self-employed capacity unless approved in advance by the probation officer.
>
> The defendant shall be prohibited from engaging in any occupation where the defendant would have access to money or other fiduciary related responsibilities, e.g., investment advisor, financial advisor, account manager, business advisor, unless approved in advance by the probation officer.

(*See* Judgment of Conviction (For Revocation of Probation or Supervised Release), April 9, 2010 (hereinafter "J of C")). Prousalis was released from federal custody on December 2, 2010.

### Prousalis's Current Request

On February 28, 2011, the Government received a letter from Prousalis addressed to the Court wherein he requested blanket permission "to travel abroad . . . [d]uring the course of the year [for] business . . . to various principal cities in the E.U. in connection with proposed intellectual property negotiations and license agreements related to [his] IP inventions." (February 28, 2011 Letter at 1-2) (hereinafter "Letter"). Prousalis also requested permission to travel to Albania at an unspecified date during the summer of 2011 for familial reasons. (Letter at 2).

Prousalis's request to travel to Europe should be denied. It appears that Prousalis is again violating the terms of his supervised release and travel to Europe would facilitate those violations. Probation Officer Charles Moore provided the Government with a copy of an unexecuted Business Advisory Agreement between N1TP, LLC and Atlantic Pacific Partners (attached as Exhibit A). N1TP, LLC is a company Prousalis incorporated that provides business advisory services on a contractual basis. The Business Advisory Agreement was provided to Officer Moore by Atlantic Pacific Partners after Prousalis's December 2010 release from prison.

Atlantic Pacific Partners informed Officer Moore that Prousalis is employed by the company in connection with developing cenotaphs in Europe. Paragraph 9 of the Business Advisory Agreement specifically states that N1TP, LLC performs its services as an independent contractor. As noted above, one of the special conditions of supervised release imposed by this Court requires Prousalis to seek and receive permission from his probation officer before working as an independent contractor. (*See* J of C). Officer Moore has informed the Government that Prousalis has neither sought, nor received, permission to work as an

The Honorable Denise L. Cote
March 17, 2011
Page 4

continued supervision before this Court. Accordingly, the Government's preference is that Prousalis's supervision remain in the Southern District of New York.

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

By:    *[signature]*
       Abigail S. Kurland
       Assistant United States Attorney
       (212) 637-2396

cc:   Thomas T. Prousalis, Jr. (By Federal Express)
      Edward Kratt, Esq. (By Federal Express)
      Probation Officer Charles Moore, EDVA (By email)
      Probation Officer Giavonnii A. Foderingham, SDNY (By email)

*[handwritten note:]* The requests for foreign travel and a transfer of jurisdiction are denied.

*Denise Cote*
March 21, 2011

# Exhibit A

## BUSINESS ADVISORY AGREEMENT

This Business Advisory Agreement (hereinafter "Agreement") is made by and between NITP, LLC (hereinafter "Advisor"), a Delaware limited liability company, and Atlantic Pacific Partners, Limited (hereinafter "Company"), a Delaware corporation.

### RECITALS

WHEREAS, the Advisor is engaged in providing business advisory services to corporations, limited liability companies, joint ventures and other business organizations;

WHEREAS, the Advisor offers to provide its services as a business advisor to the Company in connection with certain of the Company's business matters; and

WHEREAS, the Company accepts the Advisor's offer to provide its services as a business advisor to the Company in connection with certain of the Company's business matters.

NOW, THEREFORE, in consideration of the mutual promises and covenants provided herein, and for other good and valuable consideration deemed by the parties hereto to be sufficient, the parties hereto hereby agree as follows:

1. PURPOSE. The Company hereby engages the Advisor on a non-exclusive basis for the term specified in this Agreement to provide its services as a business advisor to the Company in connection with certain of the Company's business matters upon the terms and conditions set forth herein.

2. REPRESENTATIONS. The Advisor represents and warrants to the Company that it is free to enter into this Agreement and the business advisory services to be provided hereby are not in conflict with any other contractual or other obligations to which the Advisor may be involved. The Company acknowledges that the Advisor is in the business of providing business advisory services to other businesses and organizations and that nothing contained in this Agreement shall be construed to limit or restrict the Advisor in providing such services to others.

3. DUTIES OF THE ADVISOR. During the term of this Agreement, the Advisor will provide the Company with business advisory services as generally described below at the request of the Company from time to time, provided that the Advisor shall not be required to undertake duties not reasonably within the scope of the services in which the Advisor is engaged. In the performance of these duties, the Advisor shall provide the Company with the benefits of its good faith efforts and its best judgment. It is understood and acknowledged by the parties that the amount of time spent rendering such business advisory services shall be determined according to the Advisor's and the Company's mutually convenient time and schedule.

The Advisor's business advisory services may include, but are not limited to:

(a) Corporate planning and development;
(b) Business planning and development; and
(c) Mergers and acquisitions, joint ventures and other business combinations and transactions involving equity and/or debt.

4. TERM. The term of this Agreement shall be for a period of one year commencing on the execution of this Agreement, renewable upon the mutual agreement of the parties hereto upon the expiration of the term.

5. COMPENSATION. The Company agrees that the Advisor may serve as a business advisor, on a non-exclusive basis, on certain matters in which the Company may become involved, including, but not limited to, corporate and business planning, development and operations; and mergers and acquisitions, joint ventures and other business combinations and transactions involving equity and/or debt. The Company agrees that in the event that the Advisor introduces, directly or indirectly, to the Company another party or entity, and that as a result of such introduction, a combination, transaction or investment between such party or entity, or its clients or investors, and the transaction is consummated (hereinafter "Consummated Transaction"), then the Company shall pay a fee to the Advisor related to such Consummated Transaction based on the total value of all cash, securities, assets, debts and other property, paid, payable, contributed or to be contributed, transferred, deferred, invested or committed to the Company, utilizing the following Lehman formula:

(a) Seven and one-half percent (7.50%) of the first $100,000,000 of the consideration in the Consummated Transaction; plus

(b) Five percent percent (5%) of the consideration in the Consummated Transaction in excess of $100,000,000 and up to $250,000,000; plus

(c) Three and one-half percent (3.5%) of the consideration in the Consummated Transaction in excess of $250,000,000.

The parties agree that the foregoing formula does not include the value of any consideration, including real property, provided by the Company to a Consummated Transaction. Payment of any fees is contingent on the execution of an agreement acceptable to the Company and the closing of a Consummated Transaction, and the receipt of compensation thereunder. The fees due the Advisor shall be paid by the Company in like-kind compensation that the Company receives at the closing of a Consummated Transaction, and thereafter on a deferred or installment basis, which may involve payments in cash, securities, assets, debts and other property, or in a combination of any of the foregoing. By way of example, if the Consummated Transaction involves the payment to the company of cash and securities over a two-year term, the compensation to be paid by the Company to the Advisor shall be in like-kind cash and securities over the same two-year term in accordance with the compensation formula hereinabove in this paragraph.

The parties agree that the Advisor may also be paid monthly advisory fees by the Company for business advisory services rendered in addition to fees paid in a Consummated Transaction upon agreement by the parties.

Notwithstanding anything herein to the contrary, if the Company shall, within 12 months following the termination of this Agreement, conclude a Consummated Transaction with any party introduced, directly or indirectly, by the Advisor to the Company prior to the termination of this Agreement, the Company shall pay the fee to Advisor as determined above.

The Company represents and warrants to the Advisor that the engagement of the Advisor under this Agreement has been duly authorized and approved by the board of directors of the Company and this Agreement has been duly executed and delivered by the Company to the Advisor and constitutes a legal, valid and binding agreement of the Company.

6. COSTS AND EXPENSES. In addition to the fees payable hereunder, pursuant to paragraph 5 of this Agreement, the Company agrees to reimburse the Advisor, upon statement presentation following the closing of a Consummated Transaction, for any reasonable business costs and expenses incurred in connection with the services performed by the Advisor pursuant to this Agreement, including, but not

2

limited to: (i) travel expenses, including airfare, rental vehicles and taxis; (ii) hotels, and related expenses (iii) telecommunication expenses; and (iv) other reasonable business costs and expenses incurred on the Company's behalf by the Advisor.

7. BUSINESS ADVICE OF THE COMPANY. The Company acknowledges that all opinions and advice, written or oral, given by the Advisor to the Company in connection with this Agreement are intended solely for the benefit and use of the Company in considering the transaction to which they relate, and the Company agrees that no person or entity other than the Company shall be entitled to make use of or rely upon the advice of the Advisor to be given hereunder, and no such opinion or advice shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor may the Company make any public references to the Advisor, or use of the Advisor's corporate name in any annual reports or any other securities or business reports or releases of the Company without the prior written consent of the Advisor. The Company understands and acknowledges that the Advisor makes no representations whatsoever as to recommending or advising any of its clients, or other persons, to purchase or sell the Company's securities. Corporate business documents that may be prepared by the Advisor on behalf of the Company will be rendered in good faith and on the best judgment of the Advisor, and in reliance on the corporate filings of the Company as filed with the Securities and Exchange Commission. The Advisor can make no representations or warranties to the Company as to the success of any business endeavor in which it may be engaged on behalf of the Company.

8. CONFIDENTIALITY. The Company recognizes and confirms that, in advising the Company and in fulfilling its engagement hereunder, the Advisor will use and rely on documents, data, reports, material and other information furnished to the Advisor by the Company. The Company acknowledges and agrees that in performing its services under this engagement, the Advisor may rely upon the documents, data, reports, material and other information supplied by the Company without independently verifying the accuracy, completeness or veracity of same. In addition, in the performance of its services, the Advisor may look to third parties for such factual information, data and/or research upon which to base its advice to the Company hereunder as the Advisor shall in good faith deem appropriate. Except as contemplated by the terms and conditions hereof or as required by applicable law, the Advisor shall keep confidential all non-public information provided to it by the Company, and shall not disclose such information to any third party without the Company's prior written consent, other than to such of its employees as the Advisor determines to have a need to know for business or advisory purposes.

9. INDEPENDENT CONTRACTOR. The Advisor shall perform its services hereunder as an independent contractor and not as an employee, representative or affiliate of the Company. It is expressly understood and agreed to by the parties hereto that the Advisor shall have no authority to act for, represent or bind the Company or any affiliate thereof in any manner, except as may be agreed to by the Company in writing from time to time.

10. ENTIRE AGREEMENT. This Agreement is made by and between the Company and the Advisor and constitutes the entire agreement and understanding of the parties hereto, and supersedes any and all previous agreements and understandings, whether oral or written, between the parties hereto with respect to the matters set forth herein.

11. MISCELLANEOUS.

(a) Any notice or communication permitted hereunder shall be in writing and shall be deemed sufficiently given if hand-delivered, mailed first class postage prepaid, courier or by e-mail or other electronic medium to the respective parties herein.

3

(b) This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors, legal representatives and assigns.

(c) This Agreement may be executed in any number of counterparts, each of which together shall constitute one and the same original Agreement.

(d) No provisions of this Agreement may be amended, modified or waived, except in writing signed by all of the parties hereto.

(e) This Agreement shall be exclusively governed by and construed in accordance with the laws and courts of the State of Delaware. The parties hereto agree that any action brought by a party against the other party to this Agreement in connection with any rights or obligations arising out of this Agreement shall be instituted in a court of competent jurisdiction in the State of Delaware. A party to this Agreement named as a defendant by the other party to this Agreement in any action in any court other than in a court in the State of Delaware shall have the right to have such case dismissed with prejudice.

IN WITNESS WHEREOF, the parties hereto, upon proper authority, have caused this Agreement to be duly executed as of the ____ day of September, 2009.

                                NITP, LLC


                                By: _____
                                    Thomas T. Prousalis, Jr.
                                    Managing Member



SUBSCRIBED AND SWORN TO before me this ___ day of September, 2009.



                                _____
                                Notary Public

4

ATLANTIC PACIFIC PARTNERS, LIMITED

By: _____
    Howard W. Attarian
    Chairman of the Board


SUBSCRIBED AND SWORN to before me this ___ day of September, 2009.

The Honorable Denise L. Cote
March 17, 2011
Page 3

independent contractor for Atlantic Pacific Partners or any other company.

Additionally, as indicated by the title of the document, the entire purpose of the Business Advisory Agreement is to engage Prousalis's services, through his company, as a business advisor. These services include, but are not limited to: corporate planning and development; business planning and development; and advising on mergers and acquisitions, joint ventures and other business combinations and transactions involving equity and/or debt. (*See* Ex. A). Just as Prousalis failed to seek or secure Officer Moore's permission to work as an independent contractor, Prousalis also failed to seek or secure Officer Moore's permission to serve as a business advisor, in violation of another condition of Prousalis's supervised release. (*See* J of C).

Therefore, it appears that the very business Prousalis seeks to travel to various European cities to conduct violates the terms of his supervised release. And, while Officer Moore has informed Atlantic Pacific Partners of Prousalis's conviction, Prousalis's failure to seek Probation's approval of his business ventures, as required by the terms of his supervised release, is particularly concerning in light of Prousalis's crime of conviction.

Furthermore, the conduct resulting in Prousalis's most recent incarceration included defying this Court's order denying his request to travel to Europe, lying about the circumstances of his travel to Europe and then failing to inform Probation about a law enforcement encounter during his time in Albania. The Government has no confidence that Prousalis's travel in Europe would comport with any conditions imposed by Probation.

Transfer of Supervision to the United States District Court for the Eastern District of Virginia

The Court's extensive familiarity with Prousalis's underlying crime and the course of his supervised release to date is of value, indicating that there is an advantage to his

COPIES SENT TO

Abigail Kurland
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007

Edward M. Kratt
Attorney At Law
350 Broadway, Suite 1202
New York, NY 10013

U.S. Probation Department
Attn: Giavonnii A. Foderingham